CLARENCE E. McMANUS, Judge.
 

 |
 
 ‘¡STATEMENT OF THE CASE
 

 On May 5, 2008, the Jefferson Parish District Attorney filed a bill of information
 
 *752
 
 charging defendant, Mervin Patrick White, with fourth or subsequent offense driving while intoxicated (DWI) in violation of LSA-R.S. 14:98(A)(E). Defendant was arraigned on May 8, 2008, and pled not guilty. His motion to quash was denied on October 16, 2008. On December 11, 2008, the case was tried before a six-person jury.
 

 Louisiana State Trooper Sean Boyd testified at trial that on March 24, 2008, in the early morning hours, an EMS operator stopped and advised him that a subject, later identified as defendant, was stopped on the roadway on the lower level of the Westbank Expressway at Third Avenue, westbound. Trooper Boyd went around the corner and pulled up behind defendant’s truck, which he found stopped partially in the right and middle lanes of the Westbank Expressway. The trooper noticed that the brake lights were illuminated, and defendant was still behind the wheel. There were no cars around the vehicle, and the traffic signal was green.
 

 IsTrooper Boyd walked up to the side of defendant’s truck and observed defendant slumped in the front seat behind the wheel and not wearing his seatbelt. The truck was in drive and defendant’s foot was on the brake. Also, the keys were in the ignition, the vehicle was running, and the radio was playing loudly. Trooper Boyd opened the driver’s side door, stuck his arm in, put the vehicle in park, and turned it off. He shook defendant to wake him up. After ensuring that defendant did not have a medical problem, Trooper Boyd had defendant exit the vehicle.
 

 Defendant exited slowly, and his balance was unsteady. He had a strong odor of alcoholic beverage on his breath, and his eyes were bloodshot and glazed. There was no one else in the vehicle. Trooper Boyd asked defendant to produce his driver’s license, and defendant had difficulty finding it. He asked defendant his name, and defendant responded, “Mervin White.” Trooper Boyd asked defendant if he wished to take a standardized field sobriety test, which he agreed to do.
 

 The standardized field sobriety test has three parts: the horizontal gaze nystag-mus test, the walk and turn test, and the one-leg stand test. With respect to the horizontal gaze nystagmus test, defendant’s eyes had a jerky motion as they went from side to side, and defendant had difficulty staying focused. As to the walk and turn test, defendant performed poorly. Defendant did not count out loud, and he only took eight steps on each turn, missed several heel-to-toe steps, used his arms for balance, and was unable to maintain his balance. During the one-leg stand test, defendant placed his foot down three times within 30 seconds, did not look at his foot, and started over three times.
 

 Based on his observations and experience with field sobriety tests, Trooper Boyd concluded that defendant was intoxicated and placed him under arrest. He advised defendant of his rights and placed him in the rear of his police unit. A video camera in the police unit captured the incident on videotape, which was |4played for the jury. He subsequently moved defendant’s vehicle from the scene, parked it in a parking lot on the corner, and inventoried it. Trooper Boyd had no trouble starting the vehicle.
 

 Afterward, Trooper Boyd took defendant to the Jefferson Parish Correctional Center where he read defendant his rights. Defendant then signed a form agreeing to be chemically tested for intoxication with the intoxilyzer. At 4:39 a.m., the results showed that defendant’s blood alcohol level was .121 grams, with the legal limit being .08 grams.
 

 While waiting for the results, Trooper Boyd interviewed defendant and recorded
 
 *753
 
 his answers on a form. During that interview, defendant stated that he did not have any physical defects, was not diabetic, was not hurt or ill, had not taken any medications in the last 24 hours, and had not been seen by a dentist or doctor recently. Defendant also stated that he had been operating a motor vehicle, that the vehicle he was driving did not have any defects, that he was going home [at the time of the incident], and that he started from his father’s house at 9:00 p.m. Additionally, defendant answered “yes” to the question of whether he had been drinking, and he stated that he had drunk two 12-ounce glasses of Crown Royal at his father’s house.
 

 The State and the defense stipulated that defendant was intoxicated at the time of his arrest, and that the result of the intoxilyzer test was .124. They also stipulated that defendant was previously convicted of the prior offenses alleged in the bill of information, copies of which were entered into evidence.
 

 Reginald Bradley testified for the defense that he and defendant worked for Avondale Shipyards, and that he had known defendant all his life. He explained that on the day in question, he and defendant were coming from the Pee Wee Lounge on the Westbank Expressway at Ames and heading toward defendant’s | ^girlfriend’s house on Destrehan Street. Mr. Bradley was driving the truck when they left the club. Although defendant was asleep, he came “in and out” to tell Mr. Bradley where to turn to get there.
 

 As they were traveling down Destrehan, a man and a woman flagged them down for assistance in starting their vehicle. Mr. Bradley stopped to give them a “jump.” The other vehicle eventually started and when it did so, defendant’s truck died. Mr. Bradley testified that he could not turn the key forward to start the truck, and that he tried to start it for 20 to 25 minutes. He tried to push the truck off the roadway, but he could not do so by himself. He also tried to awaken defendant for his assistance in moving the truck off the road, but apparently to no avail.
 

 Mr. Bradley subsequently walked away to find somebody to help him move the truck. He recalled walking for approximately 45 minutes, and eventually, some “guy” gave him a ride back to the truck. When Mr. Bradley returned, the truck was on the side of the street, and defendant was gone.
 

 Mr. Bradley also testified that he left the keys in the ignition before he left, and that the truck was not running when he left because he could not start it. He remembered that he and defendant had problems with the ignition at the club, and he knew that defendant sometimes had problems starting the vehicle. Neither he nor the individuals he helped called anybody for assistance.
 

 Kenneth Edwards testified that he knew defendant “as being part of the family.” He asserted that he did mechanic work, and that at some point prior to March of 2008, defendant asked him to repair the ignition switch on his truck. Mr. Edwards claimed he drove the truck when defendant first bought it, and that the key terminal would lock sometimes and not turn. He recalled that they never repaired it.
 

 |fiRose White remembered the night defendant was arrested and that defendant was coming to her house on Destrehan Street at the time. She testified that she was now defendant’s wife, as she and defendant were recently married in May of 2008. Mrs. White further testified that she was familiar with defendant’s truck and that she had driven it several times. She asserted that the ignition switch was a problem, and that she had to “play with it
 
 *754
 
 a while” before the truck would start. Because of that problem, defendant had to start the truck for her most of the time.
 

 Following trial, the jury unanimously found defendant guilty as charged. Defendant filed a motion for new trial and for post-verdict judgment of acquittal that was denied on December 18, 2008.
 

 On that same date, defendant waived sentencing delays, and the trial court sentenced him to imprisonment at hard labor for 20 years without benefit of probation, parole, or suspension of sentence to run concurrently with the sentence in case number 08-2391. The trial court also ordered defendant to pay a $5,000.00 fine. Defendant’s “motion to reconsider sentence or in the alternative for a reduction of sentence” was denied on April 2, 2009. This timely appeal follows.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 By this assignment of error, defendant argues that the evidence was insufficient to support the conviction. Defendant’s second assignment of error will be addressed first, in accordance with
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992), in which the Louisiana Supreme Court stated that when the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.
 

 Defendant contends that the State’s case was entirely circumstantial, and that no person saw him drive or operate the vehicle in question while he was intoxicated. He further contends that he was asleep in a parked vehicle when the 17officer arrived on the scene, and that the officer made the assumption that he was the driver of the vehicle. He notes that he presented the uncontradicted testimony of Mr. Bradley who insisted that he drove the vehicle. He asserts that Mr. Bradley’s testimony presents a reasonable hypothesis of innocence which the State did not rebut. The State responds that the evidence establishes sufficient physical handling of the controls of the vehicle by defendant to convict him of operating the vehicle.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). In cases involving circumstantial evidence, the trial court must instruct the jury that, “ ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ ” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977. It is not the function of an appellate court to assess credibility or reweigh the evidence.
 
 State v. Smith,
 
 94-3116, p. 2 (La.10/16/95), 661 So.2d 442, 443;
 
 State v. Singleton,
 
 05-622, p. 7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 651.
 

 In the instant case, defendant was convicted of fifth offense DWI, a violation of
 
 *755
 
 LSA-R.S. 14:98, which provides in pertinent part:
 

 A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
 

 (a) The operator is under the influence of alcoholic beverages; or
 

 (b) The operator’s blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood[J
 

 In order to convict an accused of driving while intoxicated, the prosecution must prove that the defendant was operating a vehicle and was under the influence of alcohol or drugs.
 
 State v. Cowden,
 
 04-707, p. 8 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082,
 
 writ denied,
 
 04-3201 (La.4/8/05), 899 So.2d 2. To convict a defendant of a fifth offense driving while intoxicated, the State must also show that the defendant had four other valid convictions. See LSA-R.S. 14:98 E. In the instant case, defendant does not dispute on appeal that he was intoxicated or that he had four prior DWI convictions. In fact, he stipulated to those facts. Thus, the only issue on appeal is whether a rational trier of fact could have found beyond a reasonable doubt that defendant was operating the vehicle.
 

 LSA-R.S. 14:98 does not require proof that the defendant was driving a vehicle, and the jurisprudence recognizes that the term “operating” is broader than the term “driving.”
 
 State v. Rossi,
 
 98-1253, p. 1 (La.App. 5 Cir. 4/14/99), 734 So.2d 102,
 
 unit denied,
 
 99-0605 (La.4/23/99), 742 So.2d 886. However, in order to operate a motor vehicle, defendant must have exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling loof the controls for the purpose of putting the ear in motion.
 
 Id.,
 
 98-1253 at' 1, 734 So.2d at 102-03.
 

 In cases similar to the instant one, courts have found the evidence sufficient to establish that the defendants were operating their vehicles while intoxicated. In
 
 State v. Sims,
 
 426 So.2d 148, 151 (La.1983), the deputy observed defendant’s vehicle parked on the shoulder of a public highway during the early morning hours. The headlights were on, and the motor was running. Additionally, defendant was seated inside the car, under the steering wheel, slumped over, and apparently asleep.
 
 Id.
 
 The stereo was on.
 
 Id.
 
 at 155. No alcoholic beverage containers were discovered during the vehicle inventory. The supreme court found that the only reasonable hypothesis was that defendant operated the vehicle while intoxicated.
 
 Id.
 

 Likewise, in
 
 State v. Phillips,
 
 389 So.2d 1260, 1261 (La.1980), a state trooper spotted defendant’s truck parked at the intersection of a highway and a parish road. The rear wheels of the truck were on the parish road, and the front wheels were on the shoulder just off the road. Although it was mid-afternoon, the truck’s lights were on. Defendant was seated at the steering wheel, slumped over on the seat, and smelled of alcohol.
 
 Id.
 
 The supreme court found that this evidence excluded any reasonable hypothesis that defendant had driven the truck to that location and began drinking himself into a stupor or that another person had driven the truck to that location and then abandoned it in that manner to defendant.
 
 Id.
 
 at 1262.
 

 Similar to
 
 Sims,
 
 the motor of the vehicle in the instant case was running and the radio was on. As in
 
 Sims
 
 and
 
 Phillips,
 
 the defendant in the instant case was slumped in the front seat behind the steering wheel. Similar to
 
 Phillips,
 
 where the rear wheels of the truck were on the parish road, the vehicle in the instant case
 
 *756
 
 was |10found in the middle and right lanes of a public roadway. Additionally, in the instant case, the evidence showed that the vehicle was in drive, the brake lights were illuminated, and defendant’s foot was on the brake.
 

 Defendant argues that Mr. Bradley’s testimony that he drove the vehicle was uncontradicted, and that that testimony presents a reasonable hypothesis of innocence which the State did not rebut. As the State discussed in its brief, even if Mr. Bradley’s testimony was believed, it would indicate that defendant operated the vehicle. Mr. Bradley testified that he drove defendant’s truck onto the Westbank Expressway, and that defendant was asleep in the vehicle. Mr. Bradley explained that when he eventually left the vehicle in the roadway with defendant inside, the key was in the ignition, and the truck was not running. However, when the trooper arrived on the scene, the vehicle was in drive, the motor was running, the brake lights were illuminated, defendant’s foot was on the brake, the radio was playing loudly, and defendant was slumped in the front seat behind the steering wheel.
 

 Therefore, Mr. Bradley’s testimony, if believed, would show that defendant moved into the driver’s seat, turned the key in the ignition, started the vehicle, put it in drive, and placed his foot on the brake before slumping behind the steering wheel, all of which would indicate that defendant operated the vehicle. Additionally, during his interview with Trooper Boyd, defendant told the trooper that he was operating the vehicle. Also, although defendant contends that the vehicle would not start due to a problem with the ignition switch, that contention appears unlikely since he told Trooper Boyd during the interview that the vehicle he was driving did not have any defects. Based on these facts, we find that the only reasonable hypothesis is that defendant operated the vehicle.
 

 [1TWe find that the total circumstances showed sufficient physical handling of the controls of the car by the defendant. Thus, we find a rational trier of fact could have found beyond a reasonable doubt that defendant was operating the vehicle and we find the evidence was sufficient to convict him of fifth offense driving while intoxicated.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 Defendant argues that the trial court erred by denying his motion to quash the bill of information. He contends that a prior non-jury DWI misdemeanor conviction may not be used as a predicate to enhance a felony DWI sentence, noting that first and second offense DWI offenders do not have a right to a jury trial. Defendant states that this is an issue that has not previously been presented to or ruled upon by a Louisiana appellate court; however, he asserts that his position is supported by the Louisiana Supreme Court case of
 
 State v. Brown,
 
 03-2788 (La.7/6/04), 879 So.2d 1276,
 
 cert. denied,
 
 543 U.S. 1177, 125 S.Ct. 1310, 161 L.Ed.2d 161 (2005). The State responds that the basis of defendant’s claim was recently rejected by the Louisiana Supreme Court in
 
 State v. Jefferson,
 
 08-2204 (La.12/1/09), 26 So.3d 112, which involved a prior misdemeanor conviction of possession of marijuana, first offense.
 

 On September 18, 2008, defendant filed a motion to quash the bill of information based on the same arguments he makes on appeal. On October 16, 2008, the trial judge stated that he had reviewed the motion and was going to deny it. He did not provide reasons for the denial.
 

 In the instant case, defendant is correct in that the issue he raises on appeal has
 
 *757
 
 not been specifically addressed by a Louisiana appellate court. However, as the State discussed in its brief, the Louisiana Supreme Court has recently rejected the basis of defendant’s claim in
 
 State v. Jefferson, supra.
 

 |12In that case, the defendant was charged with possession of marijuana, second offense. A previous conviction for possession of marijuana, first offense, was alleged in the charging document. The defendant filed a motion to quash the bill of information alleging that the statute in question, LSA-R.S. 40:966(E)(2), was unconstitutional because it provided increased penalties for recidivist offenders on the basis of a prior misdemeanor conviction obtained without the right to a jury trial. The district court granted the motion and declared the statute to be unconstitutional. The State appealed.
 
 State v. Jefferson,
 
 26 So.3d 112.
 

 The Louisiana Supreme Court found that Louisiana’s statutory scheme of increased punishment for recidivist marijuana possession was in line with the constitutional principles of
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and did not conflict with its ruling in
 
 Brown,
 
 which it stated was limited to juvenile adjudications and the unique nature of the juvenile justice system. More specifically, the supreme court found that the Sixth and Fourteenth Amendments, as construed in
 
 Apprendi
 
 and
 
 Brown,
 
 did not preclude the sentence-enhancing use, against an adult, of a prior valid, fair, and reliable conviction of a misdemeanor, obtained as an adult, where the misdemeanor proceeding included all the constitutional protections applicable to such proceedings, even though these protections did not include the right to trial by jury. The supreme court also found that Louisiana’s statutory scheme satisfied the requirement of due process because under the Sixth and Fourteenth Amendments, states were allowed the presumption that in petty crimes and offenses, trial judges were capable of reliable fact finding. Accordingly, the supreme court reversed the judgment of the district court granting the defendant’s motion to quash and declaring the statute in question unconstitutional, and remanded for further proceedings.
 
 State v. Jefferson,
 
 26 So.3d 112.
 

 | 13As in
 
 Jefferson
 
 where the defendant was charged with possession of marijuana, second offense, the defendant in the instant case was charged with driving while intoxicated, fifth offense. In
 
 Jefferson,
 
 the prior misdemeanor conviction, first offense possession of marijuana, was obtained without the right to a jury trial, similar to the instant case, where two prior misdemeanor convictions, first and second offense driving while intoxicated, were obtained without the right to a jury trial. The defendant in the instant case made an argument similar to the one the defendant made in
 
 Jefferson,
 
 namely, that a prior non-jury misdemeanor conviction cannot be used as a predicate to enhance a subsequent felony conviction. The Louisiana Supreme Court rejected that argument in
 
 Jefferson
 
 in the context of a second offense marijuana charge.
 

 As such, based on
 
 Jefferson,
 
 we likewise reject the similar argument made by defendant in the instant ease. Therefore, we find the trial court did not err in denying defendant’s motion to quash the bill of information.
 

 ASSIGNMENT OF ERROR NUMBER THREE
 

 Defendant argues that his 20-year sentence is unconstitutionally excessive. He contends that the trial judge failed to consider a mitigating factor, namely, that he recently entered counseling for his aleo-
 
 *758
 
 hoi addiction and was showing promise of rehabilitation. He asserts that his sentence shocks the conscience, considering that he was found asleep in a non-moving vehicle, and that no accident or injury occurred to persons or property as a result of his intoxication. He notes that persons convicted of sexual battery against children and of manslaughter serve less than 20 years. The State responds that the trial court imposed a legal sentence in accordance with the statutory provisions, and that defendant has failed to establish that the sentence imposed is constitutionally excessive.
 

 |14On December 18, 2008, at the sentencing hearing, Reverend Orleano Brown testified that he had been counseling defendant for several months, and that defendant had recently gotten married and made a big change in his life. He said he knew defendant was now going in the right direction, and that this was a pivotal time in his life. Reverend Brown asserted that if given the chance and leniency by the Court, he would put his reputation on the line and take defendant’s place if defendant “did something.” He stated that it was his belief that if the Court sentenced defendant on the low end of the sentencing range, defendant would be able to rehabilitate his life. Reverend Brown also testified that he had known defendant for approximately 30 years, and that he had been counseling him for approximately three-and-one-half years regarding drinking and marriage. Reverend Brown admitted that he was not a certified social worker, had no formal training in substance abuse treatment, and was still in school at Christian Bible College.
 

 Yvette White Steib, defendant’s sister, testified at the sentencing hearing that she was an unlicensed social worker, but that she had taken substance abuse classes. Based on her personal observations, she saw defendant make a lot of progress during the last year with his substance abuse problem. She stated that getting married was a prime example of this change, and that defendant was very stable. She asserted that defendant had problems handling his emotions, but through counseling, she thought he could overcome that problem and find a way other than drinking to handle them. She indicated that their mother passing away led to defendant’s drinking and was the “complete downfall.” Ms. Steib admitted that defendant had previously received substance abuse treatment when he was convicted in 2003, but explained that their mother was very sick and then passed away during that time.
 

 hsFollowing Ms. Steib’s testimony, defense counsel encouraged the trial judge to sentence defendant on the lower end of the sentencing range, and if possible, to suspend part of the sentence and place him on home incarceration. He asserted that defendant had a good employment record and was married, in a stable relationship, and attending church. He noted that defendant was doing much better now, and that the tragedy was that defendant was finally “getting his life together” at a point when his actions had caught up with him. Defense counsel stated that in terms of danger to the public and defendant’s ability to contribute to society, he should be sentenced on the lower end of the sentencing range.
 

 The prosecutor responded that getting married did not necessarily mean defendant had changed. She also responded that there was no testimony despite his four prior convictions that defendant had attended any AA meetings, or had gotten substance abuse treatment. She reminded the trial judge that this was defendant’s fifth conviction, not his fourth. The prosecutor added that defendant had one other arrest for DWI for which he was not pros
 
 *759
 
 ecuted and several public intoxication arrests.
 

 The trial judge subsequently sentenced defendant to 20 years in the Department of Corrections without benefit of probation, parole, or suspension of sentence to run concurrently with the sentence in case number 08-2391. He also imposed a fine of $5,000.00, recommended jail-based [substance abuse] treatment, and ordered forfeiture of the vehicle. The trial judge said the sentence was based on all the testimony, including that of the state trooper, and on defendant’s criminal history with respect to so many DWI convictions and arrests and ai’rests for public intoxication. Defendant did not orally object to the sentence.
 

 On January 9, 2009, defendant filed a timely “motion to reconsider sentence or in the alternative for a reduction of sentence,” arguing that the sentence was 11 (¡excessive. On April 2, 2009, at the hearing on the motion, defense counsel asked the trial judge to reconsider suspending part of the sentence. He specifically requested that the trial judge suspend five years of the sentence and to place defendant on “five years incarceration.” The State vehemently objected. The trial judge denied the motion without giving reasons, and defense counsel noted his objection to preserve the issue for this Court.
 

 Defendant filed a motion to reconsider sentence as required by LSA-C.Cr.P. art. 881.1, arguing only that the sentence was excessive. At the hearing, defendant made a general objection to the ruling on his motion. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only.
 
 State v. Stevenson,
 
 05-52, p. 11 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, 55,
 
 writ denied,
 
 05-2592 (La.6/2/06), 929 So.2d 1247.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Smith,
 
 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 Id.
 
 A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Lawson,
 
 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
 

 A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 State v. Dorsey,
 
 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 State v. Pearson,
 
 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 Id.,
 
 07-332 at 15-16, 975 So.2d at 656.
 

 In the instant ease, defendant was convicted of fifth offense DWI in violation of LSA-R.S. 14:98. The applicable penalty provisions of that statute are as follows:
 

 E. (l)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or
 
 *760
 
 subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Seventy-five days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender’s release from custody.
 

 (4)(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
 

 In the instant case, the trial judge sentenced defendant to imprisonment at hard labor for 20 years and ordered him to pay a $5,000.00 fine pursuant to LSA-R.S. 14:98 E(l)(a). He ordered that sentence to be served without benefit of parole, |! ¡probation, or suspension of sentence in accordance with LSA-R.S. 14:98 E(4)(b). He also ordered forfeiture of the vehicle as mandated by LSA-R.S. 14:98 E(2)(a).
 

 We find the 20 year sentence imposed by the trial court is constitutionally excessive in this case. Defendant was asleep in his vehicle with the motor running and the vehicle in drive, but the vehicle was not moving at the time. Further, as pointed out by the defendant on appeal, no one was injured and there was no accident as a result of his intoxication. Further, the testimony presented at the sentencing hearing indicated the defendant had sought counseling with his minister, Reverend Brown. Defendant also got married and his sister stated he was very stable. Reverend Brown testified that he believed defendant would be able to rehabilitate his life.
 

 In
 
 State v. Conner,
 
 02-363, (La.App.5Cir.11/13/02), 833 So.2d 396,
 
 writ denied,
 
 02-3064, (La.4/25/03), 842 So.2d 396, the defendant was convicted of fifth offense driving while intoxicated and sentenced to ten years without benefit of parole, probation, or suspension of sentence. The trial court also imposed a $5,000.00 fine and ordered seizure of the vehicle for sale at auction. On appeal, defendant’s sentence was reviewed for constitutional excessiveness and affirmed.
 

 After considering the nature of the instant crime, the nature and background of the defendant, and the sentence imposed by this Court for a similar crime in
 
 State v. Conner, supra,
 
 we find the trial court did abuse its discretion in sentencing defendant to 20 years without benefit of parole, probation, or suspension of sentence. We find this sentence to be constitutionally excessive and, thus, amend defendant’s sentence and reduce the term to ten years without benefit of parole, probation or suspension of sentence.
 

 Additionally, defendant indicates on appeal that the trial judge should not have ordered three years of the sentence to be served without benefit of parole, | ^probation, or suspension of sentence pursuant to LSA-R.S. 14:98 E(4)(a), because the State presented no evidence that he
 
 *761
 
 had previously been required to participate or had participated in a substance abuse or home incarceration program. LSA-R.S. 14:98 E(4)(a) provides:
 

 (4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
 

 Contrary to defendant’s assertions, the State presented evidence that defendant had previously been required to participate in a substance abuse and home incarceration program. Also, contrary to defendant’s assertions, the trial judge ordered the
 
 entire
 
 sentence to be served without benefit of parole, probation, or suspension of sentence, not just three years, as he was authorized to do under LSA-R.S. 14:98 E(4)(b), since defendant previously received the benefit of suspension of sentence as a fourth offender, which was introduced into evidence at trial. As such, LSA-R.S. 14:98(E)(4)(b) is the applicable statute in the instant case, and not LSA-R.S. 14:98 E(4)(a), and we find defendant’s entire sentence should be served without benefit of parole, probation or suspension of sentence.
 

 Accordingly, we amend the sentence imposed by the trial court by reducing the term to ten years at hard labor without benefit of parole, probation or suspension of sentence.
 

 ERROR PATENT REVIEW
 

 Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals one error patent.
 

 The transcript and the commitment are inconsistent. The transcript reflects that the trial judge ordered the sentence to be served without benefit of parole, probation, or suspension of sentence; however, the commitment does not indicate that the trial judge imposed the sentence without benefits. The transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Therefore, we remand the matter and order the trial court to correct the commitment to reflect that the sentence is to be served without benefit of parole, probation, or suspension of sentence.
 

 Accordingly, defendant’s conviction of fourth or subsequent offense driving while intoxicated is affirmed and his sentence is amended by reducing the term to ten years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant’s sentence is affirmed as amended.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; MATTER REMANDED WITH INSTRUCTIONS.
 

 WICKER, J., concurs in the result.